UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ALEJANDRO MATA PEREZ,

     Petitioner,

  v.

JULIO HERNANDEZ, et al.,

     Respondents.[1]

CASE NO. 2:26-cv-01087-LK

ORDER GRANTING IN PART AND
DENYING IN PART PETITION FOR WRIT
OF HABEAS CORPUS

This matter comes before the Court on Petitioner Alejandro Mata Perez's Petition for Writ of Habeas Corpus, Dkt. No. 1, and Mata Perez's Motion for Leave to File Out-Of-Time Reply, Dkt. No. 25. For the reasons stated below, the Court grants in part and denies in part the petition and grants the motion for leave to file out-of-time reply.[2]

---

[1] Mata Perez named Laura Hermosillo, Acting Field Office Director for the Seattle Field Office, Immigration and Customs Enforcement and Removal Operations ("ICE"), as a Respondent, averring that "Seattle Field Office is responsible for local custody decisions relating to non-citizens charged with being removable from the United States, including the arrest, detention, and custody status of noncitizens." Dkt. No. 1 at 3. Mata Perez avers that Laura Hermosillo "is the immediate legal custodian of Petitioner." *Id.* at 3–4. Respondents substituted "Acting Seattle Field Office Director, U.S. Immigration and Customs Enforcement Julio Hernandez for Laura Hermosillo." Dkt. No. 19 at 1 n.1. Respondents do not dispute Mata Perez's characterization of the "Acting Field Office Director" as Mata Perez's immediate legal custodian. *See* Dkt. No. 9 at 2 ("Because Petitioner filed his petition after he was transferred out of this district, the parties agree that habeas jurisdiction and venue lie in the Western District of Washington.").

[2] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized[.]").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

# I.    BACKGROUND

Mata Perez is a native and citizen of Mexico. Dkt. No. 20 at 2. He entered the United States without inspection in 1986 and has remained in the United States since then. *Id.*; *see also* Dkt. No. 1 at 5. He was arrested for driving under the influence ("DUI") in 2014, after which he "first came to the attention of immigration officers." Dkt. No. 20 at 2. On December 2, 2014, immigration officers detained Mata Perez and issued him a Notice to Appear ("NTA") charging him as inadmissible pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"); he was released on an Order of Release on Recognizance ("OREC") the same day. *Id.* The OREC states that Mata Perez was released "[i]n accordance with section 236 of the [INA]," codified at 8 U.S.C. § 1226, and "must not violate any local, State, or Federal laws and ordinances." Dkt. No. 21-1 at 2. It includes a notice that "[f]ailure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by the Immigrations and Customs Enforcement." *Id.*; *see also id.* at 3 ("Failure to comply with condition[s] of your release can lead to issuance of a criminal citation, fines, detention, and/or criminal prosecution.").

Since his release on an OREC, Mata Perez has accumulated various arrests and criminal convictions.[3] On October 2, 2014, he was arrested for DUI in Multnomah County, Oregon. Dkt. No. 20 at 5. On July 22, 2015, he failed to appear in immigration court due to being in local criminal custody following a DUI arrest. *Id.* at 2. On February 2, 2015, he did not report to the United States Immigration and Customs Enforcement ("ICE") Office of Enforcement and

---

[3] Mata Perez had various arrests and convictions before he was released on an OREC as well. On July 1, 1995, he was arrested in Multnomah County, Oregon for Assault in the 4th Degree. Dkt. No. 20 at 4; Dkt. No. 21-3 at 3. On October 16, 1996, he was arrested in Multnomah County, Oregon for violation of Oregon Revised Statute Section 166.450, Obliteration or Change of Identification Number on Firearms. Dkt. No. 20 at 4; Dkt. No. 21-3 at 3. On May 24, 1998, he was arrested in Multnomah County, Oregon for Assault in the 4th Degree Domestic Abuse and Harassment Domestic Violence. Dkt. No. 20 at 4; Dkt. No. 21-3 at 3. On December 7, 1998, he was arrested in Multnomah County, Oregon for Assault in the 4th Degree Domestic Abuse and Harassing Communications, and was convicted of a lesser offense on December 31, 1998. Dkt. No. 20 at 4; Dkt. No. 21-3 at 3. On April 15, 2008, he was convicted in Multnomah County, Oregon for DUI. Dkt. No. 20 at 5; Dkt. No. 21-3 at 3.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

Removal Operations ("ERO") as required by his OREC. *Id.* at 3. On November 25, 2015, an immigration judge ("IJ") sustained the charges of removability, and the case was continued to allow Mata Perez to file applications for relief from removal. *Id.* at 2–3.

On February 5, 2016, Mata Perez was arrested for DUI in Multnomah County, Oregon. *Id.* at 5. On May 4, 2016, he failed to appear in immigration court and was ordered removed to Mexico in absentia. *Id.* at 3; Dkt. No. 21-2 at 2. On May 23, 2016, he filed a motion to reopen immigration proceedings, and it was granted without opposition from DHS on May 27, 2016. Dkt. No. 20 at 3. On May 10, 2021, Mata Perez was arrested in Multnomah County, Oregon for the offenses of Strangulation under Oregon Revised Statute Section 163.187, Attempt to Commit Crime under Oregon Revised Statute Section 161.405, Unlawful Use of Weapon under Oregon Revised Statute Section 166.220, Assault 4th Degree under Oregon Revised Statute Section 163.160, and Menacing under Oregon Revised Statute Section 163.190. *Id.* at 5. On January 15, 2025, he filed a Form I-485 Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services, and on January 2, 2026, he filed a motion to terminate immigration proceedings with the immigration court. *Id.* at 3. In the interim, he was arrested on February 18, 2025 for criminal mischief, resisting arrest, two counts of aggravated harassment, and disorderly conduct; he was convicted of two counts of aggravated harassment in Clackamas County Circuit Court on September 4, 2025. *Id.* at 5; *see also* Dkt. No. 21-3 at 4.[4]

On February 2, 2026, an IJ denied Mata Perez's motion to terminate, finding that his favorable factors (such as family ties within the United States and long residence in this country)

---

[4] The declaration of Deportation Officer Freite Subero Arias states that the February 18, 2025 arrest was in "Multnomah County, Oregon," Dkt. No. 20 at 5, while the Form I-213 states that the February 18, 2025 arrest was by "Oregon City, OR" police, Dkt. No. 21-3 at 4. Oregon City, Oregon is located in Clackamas County. *Clackamas County*, Oregon Sec. of State, https://sos.oregon.gov/blue-book/Pages/local/counties/clackamas.aspx (last visited May 28, 2026). The September 4, 2025 conviction was in "Clackamas County Circuit Court[.]" Dkt. No. 20 at 5. Therefore, it appears that the September 4, 2025 conviction relates to the February 18, 2025 arrest and is not a separate incident.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 3

were outweighed by his negative factors—specifically, his criminal history. Dkt. No. 20 at 4; Dkt. No. 21-4 at 4. On March 2, 2026, Mata Perez was sent a "G56 Call-In Letter" instructing him to report to the ICE ERO Office to "discuss the status of [his] Immigration case and to serve OREC documentation." Dkt. No. 20 at 4; Dkt. No. 21-5 at 2. Mata Perez reported as requested on March 27, 2026. Dkt. No. 20 at 4. On that day, "[a] custody redetermination was conducted, and it was determined that [he] would be taken into custody based on his recent convictions for aggravated harassment." *Id.* Assistant Field Office Director J. Chan revoked Mata Perez's OREC for "fail[ure] to comply with the conditions of release," Dkt. No. 21-6 at 2, and he was "taken into custody without incident," Dkt. No. 20 at 4.

On the same day, Mata Perez, represented by counsel, filed this petition for writ of habeas corpus. Dkt. No. 1 at 10. Respondents filed a return, Dkt. No. 19, and Mata Perez filed a reply, Dkt. No. 25.[5] The Petition is now ripe for review.

## II.    DISCUSSION

In his habeas petition, Mata Perez asserts that Respondents violated his right to due process under the Fifth Amendment by re-detaining him without adequate procedural safeguards. *See* Dkt. No. 1 at 5–7. He requests release from custody or a prompt individualized bond hearing and an award of attorney's fees and costs. *Id.* at 7, 9–10.[6]

## A.    Legal Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing

---

[5] The Court finds good cause to grant Mata Perez's motion for leave to file an out-of-time reply. *See generally id.* The delay appears to be because of excusable neglect, Fed. R. Civ. P 6(b)(1)(B), and Respondents do not oppose the request, LCR 7(b)(2) ("[I]f a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit.").

[6] Mata Perez filed this petition in the District of Oregon. *See generally* Dkt. No. 1. His petition also requests an order barring Respondents from removing him "from the District of Oregon." *Id.* at 10. That request is moot given that Mata Perez was moved to this District prior to the filing of his petition. *See* Dkt. No. 7.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 4

U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B.     Mata Perez Has Established a Due Process Violation**

The parties dispute which statute applies to Mata Perez. *See* Dkt. No. 1 at 6; Dkt. No. 19 at 6–7. The applicable statute matters because the constitutional process required is not necessarily

the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *see also id.* at 1203 (explaining that because "§ 1226(a) provides substantially different procedures than the provisions [the court had] examined in the past," the court could not accept petitioner's "suggestion that [the court's decisions regarding other detention provisions] mandate[d] the same procedural relief in this case"). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

### 1. Process Required by the Statute

#### a. 8 U.S.C. § 1226(a) is the Applicable Statutory Authority

Mata Perez states that he "is not subject to a final order of removal, and thus may only be detained under § 1226(a), which requires a prompt bond hearing before a neutral decisionmaker." Dkt. No. 1 at 6. Respondents aver that Mata Perez is "subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A)" because he is an "applicant for admission[.]" Dkt. No. 19 at 6.

8 U.S.C. § 1225 applies to "applicants for admission" to the United States. An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States[.]" 8 U.S.C. § 1225(a)(1). Applicants for admission face mandatory detention and may only be released on parole "for urgent humanitarian reasons or significant public benefit," § 1182(d)(5)(A). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). "That express exception to detention implies that there are no *other* circumstances under which aliens detained under §1225(b) may be released." *Id.* at 300.

Respondents acknowledge that courts in this District have found that a noncitizen released on an OREC is not detained under Section 1225(b). Dkt. No. 19 at 7. As stated repeatedly,[7] this

---

See, e.g., *Sanchez Henao v. Hernandez*, No. 2:26-CV-00707-LK, 2026 WL 905035, at *3 (W.D. Wash. Apr. 2, 2026); *Singh v. Noem*, No. 2:26-CV-00503-LK, 2026 WL 657036, at *3 (W.D. Wash. Mar. 9, 2026); *Balwan v. Bondi*, No. 2:26-CV-00248-LK, 2026 WL 497098, at *4 (W.D. Wash. Feb. 23, 2026).

Court agrees with the reasoning of *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297 (W.D. Wash. Sept. 30, 2025) and countless other courts across the country: "The plain text of section 1226(a)" implies that the "default discretionary bond procedures in section 1226(a)"—rather than mandatory detention procedures under 8 U.S.C. § 1225(b)—apply to noncitizens who are "'present in the United States without being admitted or paroled' under section 1182(a)(6)(A) but have not been implicated in any crimes as set forth in section 1226(c)." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1322–23; *see also Lopez-Campos v. Raycraft*, No. 25-1965, 2026 WL 1283891, at *4–6 (6th Cir. May 11, 2026); *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, No. 25-14065, 2026 WL 1243395, at *5–20 (11th Cir. May 6, 2026). "[I]f the Court were to adopt the reading of section 1225 advanced by the [Respondents], it would render significant portions of section 1226(c) meaningless," including the recently enacted Laken Riley Act, which "carved out an additional category of noncitizens from section 1226(a)'s discretionary detention scheme who now fall under section 1226(c)'s mandatory detention authority." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1325; *see also Barbosa da Cunha v. Freden*, 175 F.4th 61, 70–78 (2d Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128, 1138–41 (8th Cir. 2026) (Erickson, J., dissenting). Furthermore, if Congress had wanted Section 1225(b) to have the effect urged by the government, "it could have said so in words far simpler than those that it wrote." *Buenrostro-Mendez,* 166 F.4th at 511 (Douglas, J., dissenting (quoting *Biden v. Texas*, 597 U.S. 785, 798 (2022)); *see also Lopez-Campos*, 2026 WL 1283891, at *5; *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir. 2025).

Additionally, "where a petitioner has been 'treated by Respondents as subject to discretionary detention under section 1226, rather than mandatory detention under section 1225,' the former is more likely to apply." *Del Valle Castillo v. Wamsley*, No. 2:25-CV-02054-TMC, 2025 WL 3524932, at *5 (W.D. Wash. Nov. 26, 2025) (quoting *Romero v. Hyde*, No. CV 25-11631-BEM, 2025 WL 2403827, at *8 (D. Mass. Aug. 19, 2025)); *see also Lopez-Campos*, 2026

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 7

WL 1283891, at *6 ("[T]he government's previously unbroken 29-year streak of applying § 1226(a) as opposed to § 1225(b)(2)(A) to noncitizens like Petitioners is consequential."). The government has treated Mata Perez as subject to discretionary detention under 8 U.S.C. § 1226 since he "first came to the attention of immigration officers" in 2014 and was released on an OREC pursuant to 8 U.S.C. § 1226(a), until his March 2026 arrest. Dkt. No. 20 at 2; Dkt. No. 21-1 at 2 (OREC issued "[i]n accordance with section 236 of the Immigration and Nationality Act," which is codified at 8 U.S.C. § 1226); *see also* Office of Homeland Security Statistics, *Glossary: Release on Recognizance*, https://ohss.dhs.gov/glossary (last visited May 28, 2026) (defining "Release on Recognizance" to mean "release from ICE detention subject to reasonable conditions of [a noncitizen] in removal proceedings after having been issued a Notice to Appear (NTA) or [a noncitizen] with an appeal pending with the Board of Immigration Appeals (BIA)" "[p]ursuant to section 236(a) of the INA"). Furthermore, the NTA issued to Mata Perez in February 2014 purportedly listed him as a noncitizen "present in the United States without being admitted or paroled"—not "an arriving alien." *See* Dkt. No. 20 at 2. Nothing in the record prior to his March 2026 arrest suggests that Mata Perez's release was pursuant to Section 1225(b). These facts demonstrate that Mata Perez's detention is governed by 8 U.S.C. § 1226, not 8 U.S.C. § 1225.

Mata Perez does not discuss the adequacy (or lack thereof) of the procedural safeguards in Section 1226(a) in his petition, and absent any argument to the contrary, the Court assumes that these safeguards suffice for due process purposes. *See Clark v. Sweeney*, 607 U.S. 7, 9 (2025) ("To put it plainly, courts call balls and strikes; they don't get a turn at bat." (citation modified)); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our adversarial system relies on the advocates to inform the discussion and raise the issues to the court."). Because "the applicable statutory process shapes [the petitioner's] procedural due-process rights," *Gonzalez*

*Aguilar v. Wolf*, 448 F. Supp. 3d 1202, 1212 (D.N.M. 2020), the Court addresses the process required here.

                                        **b.**       *Procedures Required under 8 U.S.C. § 1226(a) and Implementing Regulations*

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings*, 583 U.S. at 288 ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and he is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his

employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2.      Due Process Requirements

As discussed above, Mata Perez contends that his Fifth Amendment rights were violated by his re-detention without adequate procedural safeguards. Dkt. No. 1 at 6. Respondents argue that Mata Perez was not entitled to any process prior to being re-detained, and in any case, the

revocation of his OREC was made pursuant to statutory authority. Dkt. No. 19 at 6–8. Specifically, Respondents aver that

> Even if the Court were to assess the Petitioner's detention under 8 U.S.C. § 1226(a), detention remains fully lawful. Section 1226(a) authorizes the Attorney General to "arrest and detain an alien pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The statute further provides that the Attorney General "may release the alien on bond ... or conditional parole" but expressly permits revocation of such release: "The Attorney General at any time may revoke a bond authorized by this section or parole authorized by section 1182(d)(5) of this title at any time" and "may rearrest the alien under the original warrant and again detain the alien." 8 U.S.C. § 1226(b). Here, the Assistant Field Office Director properly exercised this statutory authority on March 27, 2026, when Petitioner reported pursuant to the G-56 call-in letter. Following a custody redetermination by ERO officers that considered Petitioner's recent aggravated-harassment convictions and his overall criminal and immigration history, the prior OREC was revoked and Petitioner was taken into custody. This revocation was expressly authorized by the plain text of 8 U.S.C. § 1226(b) and was consistent with the government's prior treatment of Petitioner as subject to discretionary processes through years of OREC supervision.

*Id.* at 7–8. Mata Perez counters that the revocation of his OREC was arbitrary and unlawful because there was no material change in circumstances justifying revocation. Dkt. No. 25-1 at 6–7.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge. Id.* at 1179–80.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11

a.    *Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[ ] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Mata Perez has lived in the United States since 1986 and has developed "deep familial ties" in this country, including three U.S. citizen children. Dkt. No. 1 at 5; Dkt. No. 25-1 at 10. After briefly detaining Mata Perez in 2014, DHS released him on his own recognizance. Dkt. No. 20 at 2; Dkt. No. 21-1 at 2. He has remained in the United States on an OREC since then. Dkt. No. 20 at 2. He is entitled to at least those protections described above with respect to his protected liberty interest in remaining out of immigration custody. However, given the OREC's requirement that Mata Perez "must not violate" any laws, and his post-OREC criminal convictions, Mata Perez's liberty interest in being free from custody "is not as strong as it would be for an individual without

any showing of material changed circumstance[.]" *Quinonez Torres v. Hermosillo*, No. 2:26-cv-00076-TLF, 2026 WL 547591, at *9 (W.D. Wash. Feb. 23, 2026) (evaluating a charge for assault against a family or household member); *see also Tabares Reyes v. Hernandez*, No. 2:26-cv-00633-GJL, 2026 WL 820481, at *3 (W.D. Wash. Mar. 25, 2026) (evaluating a misdemeanor conviction for assault); *Orozco Valle v. Scott*, No. 2:25-cv-02429-JNW-TLF, Dkt. No. 15 at 11–12 (W.D. Wash. Jan. 5, 2026) (evaluating a post-release conviction for violating a no-contact order).

   b.  *Procedural Protections*

  To determine what procedures are constitutionally sufficient to protect petitioners' liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

  With respect to the first factor, as discussed above, Mata Perez has an interest in remaining out of immigration detention. *See Morrissey*, 408 U.S. at 482. Despite his liberty interest being "indeterminate" under an OREC, that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* Relatedly, Mata Perez has an interest in the government adhering to its own procedures requiring (1) a revocation made by an appropriate official and (2) a bond hearing upon request. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)); 8 C.F.R. § 236.1(c)(9). This factor

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 13

favors Mata Perez, though as set forth above, it does not weigh strongly given the materially changed circumstances (i.e., his criminal convictions) and his release condition requiring compliance with all laws.

Turning to the second factor, Respondents purported to detain Mata Perez under 8 U.S.C. § 1225(b), stripping him of his right to a bond hearing. *See* Dkt. No. 19 at 1. Furthermore, Respondents make no attempt to show that Mata Perez's OREC was revoked by an appropriate official.[8] The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

The additional procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Mata Perez's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Mata Perez could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [him] the opportunity

---

[8] Respondents assert that "[e]ven if the Court were to assess the Petitioner's detention under 8 U.S.C. § 1226(a), detention remains fully lawful" because the "Assistant Field Office Director properly exercised [the] statutory authority" of the Attorney General to revoke discretionary release. *Id.* at 7–8. However, Respondents do not explain how the Assistant Field Office Director was authorized to revoke the OREC; the regulation provides that only the "district director, acting district director, deputy district director, assistant district director for investigations, assistant district director for detention and deportation, or officer in charge (except foreign)" are authorized to revoke a noncitizen's OREC. 8 C.F.R. § 236.1(c)(9).

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 14

to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). While Respondents claim that Mata Perez was re-detained because of "his recent aggravated-harassment convictions," Dkt. No. 19 at 6—specifically, his conviction on September 4, 2025 for two counts of Aggravated Harassment, Dkt. No. 20 at 5—that does not excuse their compliance with the applicable regulations. This factor weighs in favor of Mata Perez.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Respondents argue that the government's "interests [are] heightened by Petitioner's [criminal history and] recent aggravated-harassment convictions." Dkt. No. 19 at 9. The Court acknowledges that the government's interests in enforcing immigration laws, including "protecting the public from dangerous criminal [noncitizens]" and "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding OREC revocations and bond hearings. Therefore, the Court finds that this factor too weighs in favor of Mata Perez.

Under *Mathews*, the Court finds that Respondents failed to provide Mata Perez with the process owed to him under the Due Process Clause, and he is therefore entitled to habeas relief.[9]

**C.    Remedy**

Mata Perez argues that release is the appropriate remedy, Dkt. No. 1 at 7, while Respondents argue that the appropriate remedy is a post-deprivation bond hearing. Dkt. No. 19 at

---

[9] To the extent Mata Perez sought relief regarding third country removal, Dkt. No. 1 at 7–9, that request is denied. Respondents aver that no third-country removal is foreseeable, *see* Dkt. No. 19 at 2, 11–12; Dkt. No. 20 at 5, and it appears that Mata Perez abandoned this claim on reply, *see generally* Dkt. No. 25-1.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 15

11. Here, it appears that sufficient changed circumstances exist, Dkt. No. 20 at 4; Dkt. No. 25-1 at 7, such that a bond hearing is the appropriate remedy. *See e.g.*, *Geler v. Blanche*, No. 2:26-CV-00481-LK, 2026 WL 1251660, at *7 (W.D. Wash. May 7, 2026).

The specific harm faced by Mata Perez is his detention for months without a bond hearing pursuant to Section 1226(a). "The Court finds that harm is remedied by ordering a bond hearing within seven days," and "[g]iven the due process rights at stake," if a bond hearing compliant with the Court's order is not provided promptly within that time frame, Mata Perez shall be immediately released on the terms of his most recent OREC. *Escobar Salgado*, 809 F. Supp. 3d at 1162; *see also Martinez Flores v. Kaiser*, No. 1:26-CV-00582-KES-CDB (HC), 2026 WL 482739, at *9 (E.D. Cal. Feb. 20, 2026) (ordering same); *Solano Gallardo v. Warden*, No. 5:26-CV-00485-SSS-BFM, 2026 WL 483207, at *1 (C.D. Cal. Feb. 20, 2026) (ordering same); *Araiza v. Hermosillo*, No. 2:25-CV-02139-TL, 2025 WL 3516103, at *2 (W.D. Wash. Dec. 8, 2025) (ordering same); *see also Cardozo v. Bostock*, No. 2:25-cv-00871-TMC, 2025 WL 2592275, at *2 (W.D. Wash. Sept. 8, 2025) ("In modern habeas practice, courts often 'employ a conditional order of release,' which orders the government to release the petitioner unless it 'takes some remedial action' that corrects" the government's violation of the law. (quoting *Harvest v. Castro*, 531 F.3d 737, 741–42 (9th Cir. 2008))).

Because the Court finds that a bond hearing is an appropriate remedy, it grants Mata Perez's request for a "prompt individualized bond hearing before an Immigration Judge at which [he] bears the burden of proving he is not a flight risk or danger to the community." Dkt. No. 1 at 7. The Immigration Judge must consider that Mata Perez's recent convictions—the purported basis for his re-detention—were misdemeanors, Dkt. No. 20 at 4; Dkt. No. 25-1 at 7. *Martinez v. Clark*, 124 F.4th 775, 783 (9th Cir. 2024) ("The Guerra factor most pertinent to assessing dangerousness is

the [noncitizen's] criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." (citation modified)).

### III.    CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART; and the motion for leave to file out-of-time reply, Dkt. No. 25, is GRANTED. The Court orders as follows:

1. Respondents must provide Mata Perez with a bond hearing under Section 1226(a) before an immigration judge within seven days of the date of this Order. At the hearing, Mata Perez will have the burden of proving by a preponderance of the evidence that he is not is a danger to the community or a flight risk. Respondents must ensure that the hearing is recorded. Respondents are enjoined from denying bond to Mata Perez on the basis that he is detained pursuant to 8 U.S.C. § 1225(b).

2. If a bond hearing is not provided within seven days of the date of this Order, Mata Perez shall be released from ICE custody immediately on the terms of his most recent OREC or other terms consistent with Section 1226(a). Respondents must file a Status Report with the Court either confirming that Mata Perez received a bond hearing—and the results of that hearing—or otherwise confirming his release by June 10, 2026.

3. If the immigration judge does not order Mata Perez released, Respondents are prohibited from transferring Mata Perez from this jurisdiction—i.e., the Western District of Washington—for seven days following the immigration judge's decision, unless such transfer is necessary for medical evaluation, medical treatment, release, or extenuating circumstances;

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 17

4.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at \*10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at \*10 (W.D. Wash. Jan. 31, 2022).

Dated this 29th day of May, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 18